FILED
2020 SEP 22 PM 4:49
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VERONICA M. WOPSOCK,<br><br>    Plaintiff,<br><br>v.<br><br>DEREK DALTON, in his individual and official capacity; TRAVIS MITCHELL, in his individual capacity and as the Duchesne County Sheriff; and DUCHESNE COUNTY, UTAH,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING ATTORNEY FEES AND COSTS**<br><br>Case No. 2:12-cv-00570-RJS<br><br>Chief Judge Robert J. Shelby |

Following entry of summary judgment on Plaintiff's claims against them, Defendants Derek Dalton, Travis Mitchell, and Duchesne County filed a Bill of Costs[1] and a Motion for Attorney Fees and Paralegal Fees.[2]  For the reasons explained below, the court awards the requested costs and GRANTS IN PART the Motion for Attorney Fees.

## BACKGROUND

Plaintiff Veronica Wopsock commenced this lawsuit in June 2012.[3]  In her Complaint, Wopsock alleged Defendant Dalton, a police officer, "grop[ed] [her] breasts and genitals, and otherwise [took] indecent sexual liberties with [her]" without her consent during a traffic stop.[4] Relying on this allegation, Wopsock brought one federal claim and three state-law claims against

---

[1] Dkt. 241.

[2] Dkt. 242.

[3] *See* Dkt. 2 (Complaint).

[4] *Id.* ¶¶ 16–17, 33.

Defendants.[5]  First, pursuant to 42 U.S.C. § 1983, she claimed Defendants violated her rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.[6]  Second, she claimed Defendants battered her.[7]  Third, she claimed Mitchell and Duchesne County negligently trained, supervised, and controlled Dalton.[8]  Fourth, Wopsock claimed Defendants were liable under an intentional infliction of emotional distress theory.[9]  She pleaded damages of no less than $500,000 for Defendants' alleged conduct.[10]

Defendants filed an Answer to Wopsock's Complaint.[11]  Dalton also filed counterclaims against Wopsock and third-party claims against the Ute Indian Tribe of the Uintah and Ouray Reservation, the Business Committee for the Ute Indian Tribe of the Uintah and Ouray Reservation, Jane Does 1-2, and John Does 1-4 (collectively, "the Tribe").[12]

Dalton initially brought six counterclaims against Wopsock and the Tribe.[13]  Those claims were for: (1) defamation, (2) civil conspiracy, (3) abuse of process, (4) intentional infliction of emotional distress, (5) prima facie tort, and (6) a claim for equitable relief.[14]  Dalton later added two more causes of action: (7)  a civil rights violation claim under 42 U.S.C. § 1985, and (8) a civil rights violation claim under 42 U.S.C. § 1986.[15]  Ultimately, Wopsock and the

---

[5] *Id.* at 9–11.

[6] *Id.* ¶¶ 58–59.

[7] *Id.* ¶¶ 60–61.

[8] *Id.* ¶¶ 62–65.

[9] *Id.* ¶¶ 66–70.

[10] *Id.* ¶¶ 71–74.

[11] Dkt. 10 (Answer).

[12] Dkt. 8 (Counterclaim & Third-Party Complaint).

[13] *Id.* ¶¶ 38–59.

[14] *Id.*

[15] Dkt. 24 (Amended Counterclaim & Third-Party Complaint) ¶¶ 52–63.

Tribe successfully moved to dismiss each of Dalton's counterclaims, and the court dismissed them without prejudice.[16]

In July 2019, Defendants moved for summary judgment on Wopsock's claims.[17]  To support their motions, Defendants relied on Dalton's dashboard police camera video footage of the alleged sexual assault.[18]  The court found that video footage showed Dalton performing a pat-down search of Wopsock that was brief and minimally intrusive.  The court further found there was no indication of groping or sexual touching in the video footage.  Ultimately, the court concluded no reasonable jury could find that Dalton's limited pat-down search of Wopsock constituted sexual assault, and on that basis granted Defendants summary judgment.[19]

In December 2019, Defendants filed a Bill of Costs,[20] seeking an award of their costs under Federal Rule of Civil Procedure 54(d)(1); and a Motion for Attorney Fees and Paralegal Fees,[21] asking for an award of their attorney fees under 42 U.S.C. § 1988.  Wopsock opposes both requests.[22]

## DISCUSSION

The determinations of whether to award costs or attorney fees are governed by different, although similar, standards.  The court first addresses Defendants' request for costs under Rule 54(d)(1) and then turns to their request for attorney fees under § 1988.

---

[16] *See* Dkt. 94; Dkt. 244.

[17] *See* Dkt. 203; Dkt. 205.

[18] *See* Dkt. 203 at 2–4; Dkt. 205 at 4.

[19] *See* Dkt. 237; Dkt. 244.

[20] Dkt. 241.

[21] Dkt. 242.

[22] *See* Dkt. 245; Dkt. 252.

## I.   COSTS

### a.   Legal Standard

Rule 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[23] Under this rule, "[a] prevailing party bears the burden of establishing the costs to which it is entitled."[24]  Further, "the amount must be reasonable."[25]  Thus, the court may award costs to Defendants if they (1) are the "prevailing party," and (2) establish their costs and show them to be reasonable.  If Defendants meet this burden, "the burden shifts to [Wopsock] to overcome the presumption that these costs will be taxed."[26]

### b.   Analysis

For the reasons explained below, the court concludes Defendants should be awarded their costs of $3,450.28 because they were the "prevailing party" and have met their burden to establish their reasonable costs.

### i.   Defendants are the Prevailing Party Under Rule 54(d)(1)

Under Rule 54(d)(1), a "prevailing party" is one who achieves a favorable, "judicially sanctioned change [or material alteration] in the legal relationship of the parties."[27]  Generally, the "party in whose favor judgment is rendered, regardless of the amount of damages awarded,"

---

[23] Fed. R. Civ. P. 54(d)(1).

[24] *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1288 (10th Cir. 2012) (citation omitted).

[25] *Id.* (quotation marks and citation omitted).

[26] *Id.* (quotation marks and citation omitted).

[27] *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

is the "prevailing party."[28]  A prevailing party is not required to prevail on every issue, but it must "receive at least some relief on the merits" of the claims before the court.[29]

The court entered judgment in favor of all three Defendants, dismissing each of Wopsock's claims with prejudice.[30]  Under that judgment, Defendants Mitchell and Duchesne County are clearly prevailing parties.  Wopsock makes no argument to the contrary.[31]  She argues only that Defendant Dalton is not a prevailing party because his multiple counterclaims and third-party claims were also dismissed.[32]  In reply, Defendants maintain Dalton prevailed because his counterclaims and third-party claims were dismissed without prejudice, in contrast to Wopsock's claims that were dismissed with prejudice.[33]  The court agrees with Defendants.

The distinction between claims dismissed with prejudice and without prejudice is dispositive on this issue.  "[A] dismissal without prejudice does not materially alter the legal relationship of the parties" because a party may re-file those claims.[34]  One does not "lose" when claims (or in this case counterclaims and third-party claims) are dismissed without prejudice because "the litigation [on those claims] is just postponed with the possibility of the winner

---

[28] *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1236 (10th Cir. 2018) (citation omitted); *see also Allen v. Lang*, 738 F. App'x 934, 944 (10th Cir. 2018) (unpublished) ("[T]he term 'prevailing party' is a legal term of art defined as a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.") (quotation marks and citation omitted).

[29] *Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1235 (10th Cir. 2011) (citation omitted).

[30] *See* Dkt. 244.

[31] Defendants correctly note that Mitchell and Duchesne County were not parties to Dalton's counterclaims and third-party claims. Dkt. 249 at 5. Accordingly, Wopsock's arguments concerning the counterclaims and third-party claims' impact on the court's "prevailing party" inquiry do not apply to Mitchell and Duchesne County.

[32] Dkt. 245 at 3–4. Wopsock appears to argue the number of Dalton's counterclaims and third-party claims is somehow relevant to the court's inquiry, but she does not cite any authority supporting her contention. *See id.* As a result, the court finds the number of Dalton's counterclaims and third-party claims compared to the number of Wopsock's claims to be irrelevant to its "prevailing party" inquiry.

[33] Dkt. 249 at 3–5.

[34] *United States v. Milner*, 583 F.3d 1174, 1196–97 (9th Cir. 2009); *see Dunster Live, LLC v. LoneStar Mgmt. Co., LLC*, 908 F.3d 948, 951 (5th Cir. 2018) ("A dismissal without prejudice means no one has prevailed . . . .").

being decided at a later time in a new arena."[35]  In contrast, a dismissal with prejudice results "in a defendant being the 'prevailing party' because there is a judgment on the merits and . . . [a] bar to further action between the parties."[36]  Dalton is a prevailing party in this litigation where his counterclaims and third-party claims were dismissed without prejudice to refile, but he successfully defended against Wopsock's claims by obtaining dismissal of those claims with prejudice on the merits.[37]  Dalton achieved a material change in his legal relationship to Wopsock, but Wopsock did not obtain the same result.[38]

In sum, each of the Defendants is a prevailing party entitled to an award of costs.

### ii.  Defendants' Requested Costs are Reasonable

As explained above, Defendants have the burden of establishing their costs and that the costs are reasonable.[39]  Defendants submit costs totaling $3,450.28.[40]  Defendants maintain they incurred costs of $1,140.76 "for service of summons and subpoena[s]" and an additional $2,309.52 "for printed or electronically recorded transcripts necessarily obtained for use in the case."[41]  To prove their costs, Defendants submitted five invoices for deposition transcripts, four invoices for process servers' fees, and one invoice for a hearing transcript.[42]  Collectively, these

---

[35] *Dunster Live*, 908 F.3d at 951 (citation omitted).

[36] *Major v. Valderra Dev., LLC*, 2:17-cv-00974-DN, 2019 WL 399154, *3 (D. Utah Jan. 31, 2019) (quoting *Cantrell v. Int'l Bhd. Of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 458 (10th Cir. 1995)) (quotation marks omitted).

[37] *See* Dkt. 244.

[38] *See Dunster Live*, 908 F.3d at 951 ("A dismissal without prejudice thus does not make any party a prevailing one.").  Wopsock's argument that "the legal relationship of the parties has not favorably changed for either party" because all claims have been dismissed ignores what it means for a claim to be dismissed with prejudice.  *See* Dkt. 245 at 3–4 (quotation marks omitted).

[39] *See Cohlmia*, 693 F.3d at 1288.

[40] Dkt. 241 at 1.

[41] *Id.*  Notably, the service costs were for deposition subpoenas required to obtain testimony from several key witnesses who would not testify without a subpoena.

[42] *See* Dkt. 241-1.

invoices total $3,450.28.[43]  This is sufficient for the court to conclude Defendants have met their burden.  The burden then shifts to Wopsock to "overcome the presumption that these costs will be taxed."[44]

Wopsock does not challenge any of Defendants' evidence or argue the expenses are unreasonable.[45]  Instead, she argues the court should use its discretion to deny Defendants their costs.[46]  The court has "broad discretion in awarding costs,"[47] but it is presumed the court will award costs to the prevailing party.[48]  Indeed, denying costs to the prevailing party "is a severe penalty" and must be supported by "some apparent reason to penalize the prevailing party."[49] Such reasons include "when the prevailing party was only partially successful, when damages were only nominal, when costs were unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close or difficult."[50]

Wopsock fails to identify the governing standard in her papers, nor does she attempt to argue Defendants' conduct during this litigation qualifies under one of the recognized circumstances that would justify the court denying the requested costs.[51]  Instead, she argues only that the court should deny Defendants their costs "because [the court] should simply hold,

---

[43] *Id.*

[44] *Cohlmia*, 693 F.3d at 1288 (quotation marks and citation omitted).

[45] *See* Dkt. 245.

[46] *Id.* at 4.

[47] *Griffin v. Strong*, 827 F. Supp. 683, 689 (D. Utah 1993) (citation omitted).

[48] *See Gutierrez v. Cobos*, Case No. 12-980 JH/GBW, 2016 WL 8738220, at *1 (D.N.M. June 22, 2016) ("The Tenth Circuit has upheld the traditional presumption in favor of awarding costs, even when the prevailing party is a defendant in a civil rights case.") (citing *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir. 2000)).

[49] *Bryant v. Sagamore Ins. Co.*, 618 F. App'x 423, 425 (10th Cir. 2015) (unpublished) (citation omitted).

[50] *Id.* (citation omitted).

[51] *See* Dkt. 245 at 4.

in its discretion, that neither side is the prevailing party."[52]  This argument ignores the governing standard outlined above and the court's responsibility to adhere to that standard.  The court may not act as an attorney for either party and, accordingly, will not exercise its discretion to punish Defendants by denying their costs absent argument from Wopsock under the governing legal standard.  Indeed, the court would abuse its discretion if it "simply" denied Defendants' costs.[53]  Wopsock has not met her burden to demonstrate a valid reason to deny Defendants' request for reasonable costs.

The court grants Defendants their costs of $3,450.28.

## II.   ATTORNEY FEES

### a.   Legal Standard

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."[54]  In a civil rights action, 42 U.S.C. § 1988 permits "the court, in its discretion, [to] allow the prevailing party . . . a reasonable attorney's fee."[55]  "While courts apply this provision liberally to prevailing plaintiffs, the Supreme Court has imposed a different standard for awarding attorneys' fees to prevailing defendants in civil rights cases."[56]  The court may award attorney fees to a prevailing defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without

---

[52] *Id.*

[53] *See Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 659 (10th Cir. 2013) ("When a district court denies the prevailing party costs without explanation, we vacate the costs decision and remand for an explanation or reconsideration."); *see also Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005) (reversing a district court's denial of costs because it gave no reason for the denial).

[54] *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 415 (1978) (citation omitted).

[55] 42 U.S.C. § 1988(b).

[56] *Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (unpublished) (citing *Christiansburg*, 434 U.S. at 421).

foundation, even though not brought in subjective bad faith."[57]  An award of fees may be justified "if the plaintiff violates this standard *at any point during the litigation*, not just at its inception."[58]

When attorney fees are warranted, the court applies the "lodestar method" to determine if the fees are reasonable.[59]  "Using this method, courts multiply the reasonable number of hours expended on the litigation by a reasonable hourly rate to determine the amount of a reasonable fee."[60]  It is the prevailing parties' burden to "submit evidence supporting the hours worked and rates claimed."[61]  This requires the party to "keep meticulous, contemporaneous time records to present to the court upon request."[62]  Further, the records must show "all hours for which compensation is requested and how those hours were allotted to specific tasks."[63]  If the prevailing party fails to meet this burden, the court "may reduce the award accordingly."[64]

### b.  Analysis

The court concludes Defendants are entitled to an award of attorney fees because: (1) they were the prevailing parties in this litigation, and (2) Wopsock's claims were frivolous.[65]

---

[57] *Christiansburg*, 434 U.S. at 421; *see Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983) ("A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant.") (citation omitted).

[58] *Thorpe*, 367 F. App'x at 919 (citation omitted).

[59] *See Kerner v. City & Cty. of Denver*, 733 F. App'x 934, 936 (10th Cir. 2018) (unpublished).

[60] *Id.*

[61] *Hensley*, 461 U.S. at 433.

[62] *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *overruled on other grounds*, *Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987).

[63] *Id.*

[64] *Hensley*, 461 U.S. at 433.

[65] In response to Defendants' Motion for Fees, Wopsock moved the court to sanction Defendants under Federal Rule of Civil Procedure 11.  *See* Dkt. 252 at 11.  Under the court's local rules, however, Wopsock is prohibited from including a motion in her response memorandum.  *See* DUCivR7-1(b)(1)(A) ("No motion . . . may be included in a response or reply memorandum.  Such motions must be made in a separate document.").  Accordingly, the court will not consider Wopsock's request except to summarily deny it as procedurally improper.

For the reasons explained below, the court awards fees in the amount of $90,634.25, instead of Defendants' requested amount of $141,090.[66]

### i.   Defendants are the Prevailing Party Under § 1988

Under 42 U.S.C. § 1988, the court may award "the prevailing party" its "reasonable attorney's fee."[67]  The litigant who is the "prevailing party" for purposes of evaluating costs under Rule 54(d)(1) is typically also the "prevailing party" under § 1988 because the analysis "is generally the same in the two contexts."[68]  Neither party urges a different standard.  Accordingly, the court applies here the same "prevailing party" standard it employed in its Rule 54(d)(1) analysis above.  That is, the prevailing party under § 1988 is the party that achieves a favorable, "judicially sanctioned change [or material alteration] in the legal relationship of the parties."[69]

Wopsock argues Dalton is not the prevailing party under § 1988 for the same reasons she argued he was not a prevailing party under Rule 54(d)(1).[70]  The court rejects this argument for the same reasons it already concluded Dalton is a prevailing party under Rule 54(d)(1).

Wopsock also argues Defendants are not the prevailing parties because they rejected an offer she made to mutually dismiss all claims.[71]  According to Wopsock, "[t]he necessary

---

[66] Dkt. 242 at 2.

[67] 42 U.S.C. §1988(b).

[68] *Tunison v. Continental Airlines Corp., Inc.*, 162 F.3d 1187, 1189 (D.C. Cir. 1998) (citation omitted); *see Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) ("In general, the litigant who is the prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs.") (citation omitted).

[69] *Buckhannon*, 532 U.S. at 605.

[70] *See* Dkt. 252 at 4–6.  To the extent Wopsock understands her argument to extend to all Defendants, she is mistaken because Mitchell and Duchesne County were not parties to Dalton's counterclaims and third-party claims. *See* Dkt. 8 (Counterclaim & Third-Part Complaint); Dkt. 24 (First Amended Counterclaim & Third-Party Complaint; Dkt. 191 (Second Amended Counterclaim & Third-Party Complaint).

[71] Dkt. 252 at 6.  Defendants object to Wopsock's attorney's statement concerning the alleged settlement offer as hearsay, conclusory and self-serving, and lacking foundation and personal knowledge.  Dkt. 253 at 3 n.10.  But Defendants waived their objection when they submitted a supplemental declaration from their attorney explaining that had he "received such an offer, [he] would not have recommended that [his] clients accept that offer."  Dkt. 253-1 (Suppl. Trentadue Decl.) ¶¶ 17–19.  The court considers the statements from both attorneys.

implication of Defendants' decision is that they did not view dismissal of all claims as a victory."[72]  In support of this assertion Wopsock cites *Sullivan v. School Board of Pinellas County*.[73]  But her reliance on *Sullivan* is misplaced for two reasons.  First, *Sullivan* addressed whether the plaintiff's claims were frivolous and not, as Wopsock suggests, whether the defendant was the prevailing party.[74]  Second, the *Sullivan* Court noted that "whether the defendant offered to settle" may be a relevant factor in determining whether the plaintiff's claim was "frivolous."[75]  As an initial matter, the court observes that there are countless reasons parties choose to settle disputes.  The merits of existing or potential legal claims provides only one set of relevant considerations.  Most often, settlement decisions result from careful consideration of numerous competing considerations.  This court will rarely ascribe to a party any specific motivation for settling claims.  This case offers no basis for an exception to that practice.

But even if the court entertained Wopsock's invitation to draw inferences in light of *Sullivan*, the limited facts relating to settlement in this case imply—if anything—that Dalton's counterclaims and third-party claims were not frivolous because Wopsock offered to settle.  The most likely implication to be drawn by Defendants' refusal to accept Wopsock's offer is that Defendants believed their claims were meritorious and Wopsock's claims were not.  Wopsock's arguments fail to support her contention that Defendants are not the prevailing parties under § 1988.

---

[72] Dkt. 252 at 6.

[73] 773 F.2d 1182 (11th Cir. 1985).

[74] *See id.* at 1189; Dkt. 252 at 6.

[75] *Sullivan*, 773 F.2d at 1189.

### ii.  Wopsock's Claims were Frivolous

Although Defendants are prevailing parties, the court may award attorney fees only if Wopsock's claims were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[76]  It is rare for a suit to be "sufficiently frivolous to justify imposing attorneys' fees on the plaintiff."[77]  This is because a suit is only frivolous if it is "based on an indisputably meritless legal theory" or its "factual contentions are clearly baseless."[78] Further, to make this determination, the court must "review the entire course of the litigation"[79] and "avoid *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation."[80]  Indeed, "[d]ismissal of claims at the motion to dismiss or summary judgment stage does not automatically warrant a fee award."[81]  Nevertheless, "[t]he standard . . . is met when a party utterly fails to produce *any* evidence in support of material issues necessary to withstand summary judgment."[82]

Without citing any relevant legal standards or case law,[83] Wopsock summarily argues her claims were not frivolous because "[s]he was present when Dalton touched her, and she knows where he touched her."[84]  In response, Defendants argue each of Wopsock's claims were frivolous for different reasons.  Defendants also argue that all of her claims relied on clearly

---

[76] *Christiansburg*, 434 U.S. at 421.

[77] *Thorpe*, 367 F. App'x at 920 (citation omitted).

[78] *Id.* at 919 (citation omitted).

[79] *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004) (citation omitted).

[80] *Thorpe*, 367 F. App'x at 920 (quotation marks and citation omitted).

[81] *Id.* (citation omitted).

[82] *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 926 (10th Cir. 2001) (unpublished) (citation omitted).

[83] The court notes that throughout this litigation, Wopsock repeatedly failed to cite and apply relevant legal standards and case law in her briefs.  *See, e.g.*, Dkt. 226; Dkt. 227.  This fact contributes to the conclusion that Wopsock's claims were frivolous and unreasonable.

[84] Dkt. 252 at 7.

baseless factual contentions.[85]  The court need not address each of Defendants' claim-specific arguments, however, because all four of Wopsock's claims arose out of the alleged sexual assault, which ultimately lacked any factual support.  Indeed, the claimed sexual assault was affirmatively disproven.

In her Complaint, Wopsock alleged Dalton "grop[ed] [her] breasts and genitals, and otherwise [took] indecent sexual liberties with [her]."[86]  This was the gravamen of Wopsock's entire lawsuit.  But it became evident during the course of litigation that these allegations were patently false.

To begin, Wopsock's attorney, J. Preston Stieff, filed the Complaint on June 20, 2012.[87]  Nearly five years later, in April 2017, Wopsock testified she had never met Stieff.[88]  She testified she had never spoken with Stieff, she did not review the Complaint before it was filed, and she did not know who prepared the Complaint.[89]  Under these circumstances, it is unclear how the Complaint could have included well-founded allegations—let alone comply with the requirements of Rule 11 of the Federal Rule of Civil Procedure.[90]

---

[85] *See* Dkt. 242 at 4–9; Dkt. 253 at 4–7.

[86] Dkt. 2 (Complaint) ¶ 17.

[87] *See* Dkt. 2 (Complaint).

[88] Dkt. 219-1, Ex. 4 (Wopsock Depo.) at 109.

[89] *Id.*

[90] *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support.").  Wopsock's other attorney, Jeffrey S. Rasmussen, submitted an affidavit during the course of litigation indicating that he drafted and amended the complaint.  *See* Dkt. 40-1 (Rasmussen Aff.) ¶ 4.  Rasmussen's name does not appear on the Complaint, however, and it is unclear where he obtained his information concerning the allegations in the Complaint.  *See id.* ("I completed pre-filing investigation in about January 2012 . . . .").

An additional attorney, Jeffrey S. Rasmussen, later entered his appearance on behalf of Wopsock,[91] but she never amended her Complaint.  Instead, during her deposition, she described the sexual assault in a manner materially different than alleged in the Complaint:

> [Dalton] reached into my back pockets and squeezed my butt cheeks while he was doing that with a – probably a two-inch pocket – back pocket – and then as he put his hands in the front, he touched my breast.[92]

Wopsock admitted the dashcam video footage showed the alleged sexual assault.[93]

At least by the time they saw the video footage,[94] however, Wopsock's attorneys should have recognized that no sexual assault occurred.  The video shows no groping or sexual touching, let alone anything resembling the assault described in the Complaint.  When confronted with the dashcam video of the stop, Wopsock did not withdraw or amend her claims. Rather, she continued to litigate her case in the face of evidence that clearly disproved her allegations.  She continued to prosecute her claims in reliance "on mere speculation and conjecture" that was directly contradicted by the record.[95]

And while Wopsock never challenged the validity of the traffic stop, the impounding of her vehicle, or Dalton's decision to conduct a *Terry*-style pat-down search, she continually alleged that Dalton's motive for searching her "was sexual."[96]  But as the court found when it

---

[91] *See* Dkt. 22.

[92] Dkt. 219-1, Ex. 4 (Wopsock Depo.) at 109.

[93] *Id.* 112–13.

[94] It is not clear when Wopsock and her attorneys first viewed the dashcam video.  It may have occurred when Defendants filed the footage in September 2012, *see* Dkt. 11, or when Wopsock was shown the video during her deposition in April 2017, *see* Dkt. 219-1, Ex. 4 (Wopsock Depo.).

[95] *Twilley*, 16 F. App'x at 926.

[96] *See* Dkt. 226 at 8; *see also* Dkt. 227 at 14.

dismissed her claims, Wopsock produced no evidence to support her allegation of sexual assault or her assertion that Dalton's motivation was in any way sexual.[97]

In sum, Wopsock's claims were frivolous because they were based entirely on factual contentions plainly contradicted by video evidence produced shortly after she filed her Complaint.  Her claims were frivolous at the time she filed her Complaint, and her decision[98] to continue to prosecute her baseless claims was at the very least unreasonable "after it became clear during discovery that [her] claims lacked evidentiary support."[99]

### iii.  Defendants' Attorney Fees Award

Having concluded that Defendants qualify for an attorney fee award under § 1988, the court now turns to what amount of attorney fees, if any, Defendants should be awarded.  The court's analysis begins "by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate."[100]  Next, the court "adjust[s] the lodestar . . . downward to account for the particularities of the suit and its outcome."[101]

---

[97] See Twilley, 16 F. App'x at 926 (affirming a district court's "finding that plaintiff's claims were frivolous and unfounded" when the "plaintiff failed to produce any evidence that defendant's proffered explanation for the termination was pretextual and . . . his claims were based on mere speculation and conjecture").

[98] The court notes that Wopsock's decision to continue litigating her claims may not have been entirely her own. Wopsock made it clear during her deposition that she was not sure who was paying her attorneys for their work.  See Dkt. 219-1, Ex. 4 (Wopsock Depo.) at 117.  Irene C. Cuch, who was a chairwoman on the Ute Tribal Business Committee when this litigation commenced, testified that the Ute Tribe was paying for Wopsock's attorney fees. Dkt. 219-1, Ex. 2 (Cuch Depo.) at 82–83.  Accordingly, the court infers that someone besides Wopsock may have been directing the litigation of her claims.

[99] Twilley, 16 F. App'x at 926.

[100] Zinna v. Congrove, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted).

[101] Id. (citation omitted).

### 1.  The Lodestar

As explained above, Defendants have the burden of producing sufficient evidence that their fees and hours are reasonable.[102]  Defendants request attorney fees in the amount of $141,090.00.[103]  They support this figure with declarations from local attorneys, including Defendants' attorney Jesse C. Trentadue, résumés of the attorneys and paralegals who worked on the case, and forty-six (46) pages of billing records.[104]  The requested fees are specifically based on 1,038 hours of legal work billed at $150 for two senior-level attorneys, $125 for three associate-level attorneys, and $70 for three paralegals, all of whom worked on the case during its seven-year span.[105]

Wopsock does not argue Defendants attorneys' billing rates are unreasonable.  She instead challenges as insufficient the evidence submitted by Defendants in support of their motion.[106]  Specifically, Wopsock argues the court should deny Defendants their attorney fees because: (1) Defendants' billing records are not contemporaneous billing records, (2) Defendants' billing records include "block" billing, and (3) the requested fees include non-compensable work related to Defendants' counterclaims and third-party claims.[107]  The court disagrees with Wopsock's first contention, but concludes the requested fee should be reduced—not denied—based on Wopsock's second and third arguments.

---

[102] *See Jensen v. West Jordan City*, Case Nos. 17-4173 & 17-4181, 2020 WL 4462065, at *7 (10th Cir. 2020) (citation omitted).

[103] Dkt. 242 at 11.

[104] *See* Dkt. 242-1 (Trentadue Decl.); Dkt. 242-2 (Waddoups Decl.).

[105] Dkt. 242 at 9–10.

[106] Dkt. 252 at 7–11.

[107] *Id.*

First, Wopsock argues Defendants have not submitted original, contemporaneous billing records.[108]  But the court has carefully reviewed the billing records submitted by Defendants, and it is clear they are contemporaneous billing records.[109]  Further, Defendants' attorney testified the billing records are a "true and correct copy" of his firm's "contemporaneous billing records" that he edited "by removing therefrom work performed" for the counterclaims and third-party claims, "duplicative or redundant" work, and his firm's operating costs.[110]  These edits appear to be a proper "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise."[111]  Accordingly, Wopsock's first argument is unpersuasive.[112]

Next, Wopsock argues Defendants' records are deficient because they include block billing, i.e., a single time entry on the billing record that includes multiple tasks without indicating how much time was spent for each task.[113]  Defendants concede some entries were block billed, and they reduce their requested fee by $1,200 to account for the removal of those block billed entries.[114]  The court agrees the fee request should be reduced by $1,200 for the block billed entries on the billing records.

Lastly, Wopsock argues Defendants' requested fees are improper because they include time Defendants' attorneys spent working on Dalton's counterclaims and third-party claims.[115]

---

[108] *Id.* at 10–11.

[109] *See* Dkt. 242-1 (Trentadue Decl.) at 17–62.

[110] *Id.* ¶¶ 11, 13.

[111] *Hensley*, 461 U.S. at 434.

[112] Defendants submitted a supplemental declaration from Trentadue in their Reply Memorandum that further explains the billing records.  *See* Dkt. 253-1 (Suppl. Trentadue Decl.) ¶ 3.  Wopsock objects to these supplemental statements as violating the best evidence rule and for lacking foundation.  *See* Dkt. 258 at 2.  The supplemental statements from Trentadue, however, are not relevant to this court's decision.  Accordingly, the court makes no decision on Wopsock's objection.

[113] *Id.* at 8.

[114] Dkt. 253 at 9.

[115] Dkt. 252 at 8–10.

Defendants concede their requested fees should be reduced by $11,407.50 for work billed exclusively for briefing related to their counterclaims and third-party claims.[116]  But they rely on language from *Ramos v. Lamm* to argue other fees incurred for Dalton's counterclaims and third-party claims are compensable because they "involve a common core of facts or are based on related legal theories and cannot be viewed as a series of discrete claims."[117]  The court disagrees with Defendants.

In the section of *Ramos* Defendants cite, the Tenth Circuit provided guidance for district courts to "determine whether an adjustment is necessary" when a party prevails on some, but not all, of its claims.[118]  The Tenth Circuit specifically discussed two scenarios.[119]  First, "if a [party] fails to prevail on claims 'unrelated' to those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be compensated."[120]  Second, the party may be compensated for the unsuccessful claims if they "involve 'a common core of facts or [are] based on related legal theories and cannot be viewed as a series of discrete claims."[121]  Under the second scenario, "the most critical factor is the degree of success obtained."[122]

The Tenth Circuit provided additional guidance for these scenarios in *Sinajini v. Board of Education of San Juan School District*.[123]  It explained that under the first scenario, the court should exclude fees for "unrelated claims" if they are "distinct in all respects from successful

---

[116] Dkt. 253 at 9.

[117] *Ramos*, 713 F.2d at 556 (quotation marks and citation omitted).

[118] *Id.*

[119] *Id.*

[120] *Id.* (quoting *Hensley*, 461 U.S. at 435).

[121] *Id.* (quoting *Hensley*, 461 U.S. at 435) (alteration in original).

[122] *Id.* (citation omitted).

[123] 233 F.3d 1236 (10th Cir. 2000).

claims."[124]  This requires consideration of whether those distinct claims "are unrelated to the pursuit of the ultimate result achieved."[125]  Under the second scenario, the Tenth Circuit reiterated "the district court should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation."[126]

The court finds Dalton's counterclaims and third-party claims are not "distinct in all respects" from his successful defense[127] and therefore applies the standard relevant to the second scenario in *Ramos*.  Under that standard, the court concludes Defendants should not be compensated for fees associated with Dalton's counterclaims and third-party claims because those claims were entirely unsuccessful and unnecessary to Defendants' successful defense against Wopsock's claims.  Defendants appear to recognize they should not receive fees related to Dalton's counterclaims and third-party claims because their attorney removed fees related to those claims from the fee request and the billing records.[128]  Further, Defendants concede an additional $11,407.50 should be reduced from their requested attorney fees because that amount represented hours spent solely on the counterclaims and third-party claims.[129]  Thus, Defendants should receive a reasonable attorney fee for their successful defense, but not for Dalton's unsuccessful and unnecessary counterclaims and third-party claims.

"A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its

---

[124] *Id.* at 1241 (brackets and citation omitted).

[125] *Id.*

[126] *Id.* at 1242 (citation omitted).

[127] It is obvious from reviewing Dalton's counterclaims and third-party claims that many elements and factual allegations critical to their success rely on him proving the alleged sexual assault never occurred.

[128] *See* Dkt. 242-1 (Trentadue Decl.) ¶ 13.

[129] Dkt. 253 at 9.

use."[130]  The court finds there is sufficient reason here to generally reduce the overall fee requested by Defendants because Defendants' billing records intermingle time spent on their defense with time spent on Dalton's counterclaims and third-party claims.[131]  Many of those entries lack sufficient specificity for the court to determine what fees are relevant only to Defendants' defense to Wopsock's claims.[132]  The degree of intermingled billing and lack of specificity makes it impossible for the court to simply reduce the requested fee by eliminating the fees associated with the offending entries.  Accordingly, the court concludes it is reasonable to reduce Defendants' requested fee by an additional 10%,[133] or $12,848.25, after accounting for the $1,200 and $11,407.50 reductions addressed above.[134]

In sum, the court concludes that a reasonable attorney fee for Defendants is $115,634.25.

## 2.  A Downward Adjustment

In addition to arguing the court should reduce Defendants' attorney fees for those reasons addressed above, Wopsock also argues the court should exercise its discretion and deny Defendants their attorney fees because she is unemployed, the fees would go to an indemnity pool, and "Defendants brought and lost numerous frivolous claims."[135]  Although the court

---

[130] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986) (citations omitted).

[131] *See* Dkt. 252 at 9–10 (citing various entries in Defendants' billing records that appear related to Dalton's counterclaims and third-party claims).

[132] For example, the billing records show Trentadue billed two hours for "Review and revise Answer, including review with respect to tribal immunity."  Dkt. 242-1 (Trentadue Decl.), Ex. C at 19.  Although it is possible the tribal immunity issue relates to Defendants' defense, it is more likely they relate to Dalton's third-party claims. Without more information, the court cannot determine if any amount of that entry may be properly awarded.

[133] The ten percent reduction—instead of a higher percent—is justified because Defendants' counsel already attempted to remove all fees related exclusively to the counterclaims and third-party claims, and Mitchell and Duchesne County should not be unduly penalized for Dalton's counterclaims and third-party claims.  *See* Dkt. 242-1 (Trentadue Decl.) ¶ 13.

[134] *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time.") (citation omitted).

[135] Dkt. 252 at 11.

disagrees with Wopsock's contentions, it nevertheless exercises its discretion to further reduce Defendants' award of attorney fees for a different reason.

The court rejects each of Wopsock's arguments because they are wholly unpersuasive. She cites no legal support for her arguments and does not explain the basis for the arguments. Instead, she provides all arguments in a single sentence and appears to expect the court to expand on them. This the court will not do.

As part of its review of this litigation in its totality, however, the court finds it necessary to exercise its discretion to further reduce Defendants' attorney fees based on two instances of sanctionable conduct by Defendants. First, the court sanctioned Defendants for making frivolous discovery arguments.[136] Second, and more significantly, Defendants misrepresented facts to this court that unnecessarily prolonged the litigation. Specifically, Defendants alleged in a motion to dismiss that Wopsock failed to first submit a required notice of claim before filing suit, and therefore her state-law claims were barred by state law.[137] Based on that representation, the court granted Defendants' motion and dismissed Wopsock's state-law claims.[138] The court reinstated those claims, however, because Defendants later admitted that Wopsock had in fact submitted a notice of claim.[139] This misrepresentation was egregious, precludes Defendants from recovering any attorney fees related to that motion, and justifies a further reduction to the

---

[136] *See* Dkt. 96 at 3 ("Because the Court finds the County Defendants' positions with respect to these Motions lack merit, the Court grants the Tribal Parties' requests for sanctions.").

[137] Dkt. 182 at 1–2.

[138] *Id.* at 5.

[139] *Id.*

attorney fee awarded to Defendants.  Accordingly, the court reduces the attorney fees—

$115,634.25—by an additional $25,000.[140]

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Bill of Costs[141] and awards

them $3,450.28 in costs.  The court also GRANTS IN PART Defendants' Motion for Attorney

Fees,[142] awarding a reduced attorney fee of $90,634.25.

SO ORDERED this 22nd day of September 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[140] The court arrived at this figure by reviewing Defendants' attorneys' billing record and identifying what appears to be approximately 50.1 hours of work Defendants' attorneys billed in relation to the motion to dismiss and Wopsock's motion to reconsider.  *See* Dkt. 242-1, Ex. C (Trentadue Decl.) at 38–42, 60.  The court then multiplied that time by Trentadue's hourly fee ($150).  Lastly, the court multiplied that number ($7,515) by three ($22,545) and rounded up to $25,000 to account for time the court may have missed while reviewing the billing record and because of the seriousness of Defendants' misconduct.

[141] Dkt. 241.

[142] Dkt. 242.